# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Peggy A. Papay<br>9040 North Placita Verde<br>Tucson, Arizona 85704, | :<br><br>: | |
| Plaintiff | : | |
| -vs- | : | Civil Action No. _____ |
| Laboratory Corporation of America<br>2338 West Royal Palm Road<br>Suite J<br>Phoenix, Arizona 85021 | :<br><br>:<br><br>: | |
| and | : | |
| Julie Felmet<br>Laboratory Corporation of America<br>2338 West Royal Palm Road<br>Suite J<br>Phoenix, Arizona 85021 | :<br><br><br>:<br><br>: | |
| and | : | |
| Retrieval-Masters Creditors Bureau, Inc.<br>4 Westchester Plaza<br>Suite 110<br>Elmsford, New York 10523 | :<br><br>:<br><br>: | |
| and | : | |
| American Medical Collection Agency<br>4 Westchester Plaza<br>Suite 110 | :<br><br>: | |

| | |
|---|---|
| Elmsford, New York 10523 | : |
| and | : |
| CCS Commercial, LLC<br>2 Wells Avenue<br>Newton, Massachusetts 02459 | :<br><br>: |
| and<br>Credit Collection Services<br>2 Wells Avenue<br>Newton, Massachusetts 02459, | :<br>:<br><br>: |

      Defendants

## COMPLAINT AND COMPLAINT FOR DECLARATORY JUDGMENT

### I.    PARTIES, OPERATIVE FACTS

1. At all times pertinent hereto, Plaintiff was a resident of this State;

2. At all times pertinent hereto, Defendant Laboratory Corporation of America [hereafter "LCA"], was a foreign corporation doing business in this State;

3. At all times pertinent hereto, to Plaintiff's believe, Defendants Retrieval-Masters Creditors Bureau, Inc. and American Medical Collections Agency [hereafter, together "AMCA"] were foreign entities engaged in collecting debts within this State;

4. At all times pertinent hereto, to Plaintiff's believe, Defendants CCS Commerical, LLC and Credit Collection Services [hereafter, together, "CCS"] were foreign entities engaged in collecting debts within this State;

5. On or about February 27, 2009, Plaintiff was seen as a patient at Ironwood Ob/Gyn in Tuscon, Arizona. The practicioner took a swab of bodily fluid from Plaintiff and advised a test would be run. Subsequently, Plaintiff received a bill from LCA, purporting to charge her $339.00 for having conducted this simple test;

6. Plaintiff disputed the amount of the bill with Ironwood, and that practice advised the employee discount would reduce the amount of $298.00 – and Ironwood would honor that amount;

7. Subsequently, LCA began sending collection notices under the name "LCA Collections" in the amount of $298.00, bearing Invoice No. 45478107, and Plaintiff retained the undersigned;

7. On May 8, 2009, the undersigned wrote to LCA, disputing the amount of the bill as excessive and unreasonable, requesting that LCA provide an invoice reflecting the billing it would make to an insurance company, and directing that all communications be directed to the undersigned;

8. On June 9, 2009, Plaintiff issued a check, No. 2180, in the amount of $100.00 with the legend, "full and final payment" above the endorsement, in the favor of LCA. On or about June 19, 2009, LCA negotiated the check. See, Exhibit "A."

9. Subsequently, on June 20, 2009, LCA again invoiced Plaintiff, Invoice No. 11792710, in the purported amount of $298.00; LCA began to telephone Plaintiff in disregard of the directions in the May 8, 2009 correspondence from counsel;

10. On August 31, 2009, LCA issued yet another Invoice, No. 45478107, demanding $339.00 in payment;

10. From June, 2009, into September, 2009, LCA continued to dun Plaintiff for both Invoices, and continued to call her home phone demanding payment. LCA assigned, respectively, the Account numbers 9090G4802060 ($198.00) and 905849321230 ($339.00) to these purported debts;

11. On September 8, 2009, the undersigned wrote again to LCA, reiterating that full payment of $100.00 had been made, and directing again that any communication be directed to the undersigned;

12. Subsequent to the communication, LCA retained the AMCA Defendants as its agents, and supplied AMCA with the LCA account

numbers for the two purported debts. AMCA began dunning Plaintiff and calling her home number directly dozens of times each week;

13. On January 4, 2010, the undersigned mailed to AMCA and LCA a copy of the previous letter date September 8, 2009;

14. Following the receipt of the letter, AMCA continued to dun Plaintiff directly and continued to call her home number repeatedly;

15. AMCA continued to call, and dun Plaintiff through the spring of 2010;

16. On July 4, 2010, the undersigned again wrote to AMCA and LCA, protesting the harassment of Plaintiff by Defendants, and again directing them to cease and desist all attempts to communicate with her;

17. On July 12, 2010, Defendant Julie Felmet, within the scope and course of her employment with LCA, wrote a letter to the undersigned, falsely asserting that Plaintiff had incurred debts to LCA both on February 27, 2009 and March 30, 2009, citing the purported invoices as evidence of the debt;

18. AMCA did not respond to the correspondence, and continued to dun Plaintiff and repeatedly call her home in a harassing course of conduct;

19. On or about January 1, 2011, LCA retained the CCS Defendants as its agents to collect the fraudulent debts. CCS, despite notice

to the contrary, began dunning Plaintiff and calling her home number repeatedly, continuing the pattern of harassment begun by LCA;

20. On or about July 1, 2011, CCS, despite notice and knowledge that Plaintiff owed no debt to LCA, and with LCA's approval and acquiescence, reported to the national credit reporting agencies that Plaintiff owed the two separate unpaid debts to LCA. The agencies noted these collections as "adverse accounts" and this reduced Plaintiff's credit "score" dramatically;

21. On or about October 1, 2011, Plaintiff and the undersigned applied for modification of the mortgage loans on their residence. Plaintiff's credit history, with the false adverse accounts on record, caused the financial institution to refuse her as a signatory on the loan modification;

22. On October 24, 2011, Plaintiff again notified Defendants by written communication, through her counsel, to cease any collection efforts. Following that notification, CCS continued – and continues – to send Plaintiff collection letters and to call repeatedly on her phone;

## II. JURISDICTION AND VENUE

23. Plaintiff realleges Paragraphs 1 through 22 as if fully set forth herein;

24. This Court has jurisdiction of this case under 28 U.S.C. §1332, there being complete diversity and the amount in controversy exceeding $75,000.00;

25. This Court has jurisdiction of this case pursuant to the federal question statute, 28 U.S.C. §1331, being filed under the Fair Debt Collection Practices Act, 15 U.S.C. §1692a, *et seq.*. This Court also has pendent jurisdiction of the state law claims, which arise out of the same nucleus of operative facts, pursuant to 28 U.S.C. §1367;

26. Venue is proper in this Court pursuant to 28 U.S.C. §1391;

### III. FIRST CLAIM: STATE LAW CLAIM: CLAIM FOR DECLARATORY JUDGMENT: ACCORD AND SATISFACTION

27. Plaintiff realleges Paragraphs 1 through 26 as if fully set forth herein;

28. Plaintiff and LCA, in June, 2009, were engaged in a dispute over an alleged liquidated debt in the amount of $298.00;

29. When LCA's negotiation of Plaintiff's check No. 2180, endorsed over the legend "full and final payment," constituted accord and satisfaction of a disputed debt;

30. From June, 2009, none of the Defendants held debt of Plaintiff;

### IV. SECOND CLAIM: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT [FDCPA]

31. Plaintiff reallleges Paragraphs 1 through 30 as if fully set forth herein;

32. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined in 15 U.S.C. §1692a(3);

33. At all times pertinent hereto, Defendants CCS and AMCA were "debt collectors" as that term is defined in 15 U.S.C. §1692a(6);

34. Defendants violated the FDCPA. Such violations include, but are not limited to violations of the following subsections:

    a. §1692c(a)(2)/§1692c(c) [failing to cease communication upon notice that consumer is represented by counsel];

    b. §1692(f)(1) [attempting to collect a debt in an amount not expressly authorized by agreement]

    c. §1692d [engaging in harassment and oppression of the consumer]

    d. §1692f [use of unconscionable practices to collect debt]

    e. §1692e(8) [reporting adverse information to credit reporting agency when debt collector knows or should know that the debt is invalid or disputed];

35. As a direct an proximate result of these violations, Plaintiff suffered actual damages, including, but not limited to, serious emotional

distress, loss of self-esteem, injury to credit and permanent loss of credit standing, and permanent impairment of earning capacity;

## V. THIRD CLAIM: STATE LAW CLAIM AGAINST LCA AND FELMET : NEGLIGENCE/INTENTIONAL TORT

36. Plaintiff realleges Paragraphs 1 through 35 as if fully set forth herein;

37. As of June, 2009, LCA knew that Plaintiff had incurred a single debt with the Defendant, and further knew that it had compromised that debt by negotiating Plaintiff's Check No. 2180;

38. Nonetheless, LCA created a second, false account purporting to evidence a debt of $339.00 supposedly incurred on March 30, 2009. LCA thereupon began engaging in a pattern of harassing and oppressive actions towards Plaintiff;

39. LCA falsely reported to AMCA and CCS that it was owed a legitimate debt of $339.00, and a second debt of $198.00 without disclosing to the other Defendants that the first was false and the second compromised;

40. LCA retained AMCA, and later, CCS, with the knowledge that these Defendants, its agents, would engage in attempted collection of debts LCA knew were false;

41. By June, 2010, LCA knew that AMCA was engaging in practices offensive to the consumer and in violation of the FDCPA;

42. LCA, rather than reining in the offending agent, affirmatively approved the unconscionable and unlawful actions taken, knowing that there was no legitimate basis upon which such actions could be taken;

43. LCA's actions were intentional and malicious and intended to cause Plaintiff serious distress and to extort financial gain to which neither it, nor its agents, were entitled;

44. Further, LCA knew that its agents would report the false debts to the credit reporting agencies;

45. LCA's acts and affirmation of the unconscionable and unlawful actions by its agents violated its duty to cease and desist in any efforts to collect on the false and compromised debts;

46. As a direct and proximate result, Plaintiff suffered actual damages, including, but not limited to, serious emotional distress, loss of self-esteem, injury to credit and permanent loss of credit standing, and permanent impairment of earning capacity;

### VI. FOURTH CLAIM: STATE LAW CLAIM AGAINST LCA, FELMET AND CCS DEFENDANTS; DEFAMATION

47. Plaintiff realleges Paragraphs 1 through 46 as if fully set forth herein;

48. LCA maliciously defamed Plaintiff when it published to AMCA and CCS the alleged debts;

49. CCS's publication to the three national credit reporting agencies, that Plaintiff owed two separate debts which were undisputed, was false and malicious;

50. LCA knew that its report to AMCA and CCS of the two false debt collections would be re-published by either AMCA or CCS, its agents, and thus, that the false debts would be asserted as valid;

51. At the time it acquired the debt, CCS knew that Plaintiff disputed the existence of any debt, yet it intentionally and maliciously published the alleged debt;

52. As a direct and proximate result, Plaintiff suffered actual damages, including, but not limited to, serious emotional distress, loss of self-esteem, injury to credit and permanent loss of credit standing, and permanent impairment of earning capacity;

WHEREFORE, Plaintiff demands judgment of Defendants, jointly and severally, as follows:

1. Under the First Claim, a Declaration that the valid debt originally asserted as $339.00, subsequently reduced in demand to $298.00, being LCA Account 9090G4802060 ($198.00), was extinguished by accord and satisfaction in or around June, 2009; and further, a Declaration that no

asserted second debt, LCA Account No. 905849321230 ($339.00) ever existed;

      2.      Under the First Claim, an award of attorney fees and costs pursuant to A.R.S. 12-341.01;

      3.      Under the Second Claim, actual damages as found by the jury;

      4.      Under the Second Claim, an award of attorney fees and costs, pursuant to 15 U.S.C. §1692k(a)(3);

      5.      An award of statutory damages;

      6.      Under the Third Claim, such compensatory damages and punitive damages against Defendants Laboratory Corporation of America and Julie Felmet in such amounts as the jury deems just;

      7.      Under the Fourth Claim, compensatory and punitive damages against the CCS Defendants, Laboratory Corporation of America, and Julie Felmet in such amounts as the jury deems just;

      8.      An award of attorney fees and costs pursuant to the common law.

                              Respectfully Submitted;

                                _____
                                Michael Garth Moore (023742)
                                Attorney for Plaintiff
                                9040 North Placita Verde

Tucson, Arizona 85704
Telephone: 888-318-0075
mike@mgmoorelaw.com